IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-02-310 (1) |
| | § | C.A. No. C-05-076 |
| MARIA MAGDALENA MALDONADO, | § | |
| | § | |
| Defendant-Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Maria Magdalena Maldonado's ("Maldonado") motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (D.E. 68).[1] Also before the Court is the government's response, which moves to dismiss, or in the alternative, for summary judgment. (D.E. 73). For the reasons set forth herein, the Court DENIES Maldonado's § 2255 motion and DENIES her a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction in this matter under 28 U.S.C. § 2255.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Offense Conduct[2]**

On October 18, 2002, Maldonado drove her 1999 Ford pickup truck into the primary inspection lane at the Sarita, Texas Border Patrol Checkpoint. A Border Patrol agent observed Maldonado's sister and co-defendant, Anna Maria Gonzalez ("Gonzalez"), sitting in the passenger

---

[1]    Docket entries refer to the criminal case, CR. No. C-02-310(1).

[2]    Unless otherwise noted, the description of the offense conduct is taken from the Presentence Investigation Report ("PSR").

seat, and three small children sitting in the backseat. According to the agent, both adult passengers appeared to be nervous. Their story sounded suspicious to the agent, and Maldonado was wearing a jacket, which was inconsistent with the hot temperature that day. Additionally, Gonzalez was wearing clothing too large for her body size. Based on the above facts, the agent requested and received consent to further inspect the vehicle in the secondary inspection area.

Once in the secondary area, Maldonado and Gonzalez were instructed to exit the vehicle. As Gonzalez did so, several agents noticed that she had something square under her shirt and was holding her stomach. An agent requested that Gonzalez lift her hands, and she refused. Upon a second request, Gonzalez raised her hands and two plastic bundles containing cocaine fell from beneath her shirt. The cocaine had a net weight of two (2) kilograms and a purity of 89%.

The agents subsequently searched Maldonado and discovered three bundles of cocaine concealed in a waist strap. The cocaine had a net weight of three (3) kilograms and a purity of 86%. Both Maldonado and Gonzalez told the agents that they knew the substance was cocaine. Both were arrested.

**B.      Criminal Proceedings**

On November 13, 2002, Maldonado was charged in a two-count indictment with: (1) aiding, abetting, and assisting others known and unknown to knowingly and intentionally possess with intent to distribute approximately six kilograms of cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) ("Count One"); and (2) knowingly and intentionally conspiring to possess with intent to distribute approximately six kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 ("Count Two"). (D.E. 1).[3] Maldonado pleaded guilty to Count One

---

[3]     The indictment referenced six kilograms of cocaine, and the Court's reference to the indictment at the rearraignment mentioned six kilograms. (D.E. 60 at 13; but see D.E. 60 at 15, 30 (referencing five

pursuant to a written plea agreement, and this Court accepted her guilty plea at her rearraignment on December 18, 2002. (D.E. 12, 13).

Pursuant to the Court's instructions, the probation department prepared a Presentence Investigation Report ("PSR"). The PSR calculated Maldonado's base offense level as 32, and adjusted the offense downward by three levels for acceptance of responsibility. The resulting total offense level, therefore, was 29. (See PSR at ¶¶ 9-18). Maldonado had no criminal history points, so her criminal history category was I. This resulted in a guideline term of imprisonment of 87 to 108 months. Pursuant to USSG § 5G1.1(b), however, the statutorily required minimum sentence is the guideline sentence where it is greater than the maximum of the applicable guideline range. Thus, Maldonado's guideline sentence was 120 months. (PSR at ¶ 31).

Maldonado, through retained counsel, filed objections to the PSR. Maldonado's sentencing counsel objected to the amount of drugs attributed to Maldonado, which he contended had a net weight of only five kilograms, although six kilograms was the amount cited in the indictment.[4] He also objected to Maldonado not receiving a two-point adjustment for playing a minor role in the offense. Finally, he also argued that she qualified for the safety valve provision because she met the criteria of USSG § 5C1.2. (D.E. 37).

Maldonado's sentencing was held on March 14, 2003. At sentencing, the Court heard testimony from Maldonado and denied her safety valve relief, finding that she had not truthfully debriefed, and therefore did not meet the requirements of 18 U.S.C. § 3553(f)(5). (D.E. 59,

---

kilograms)). The net weight of the cocaine was determined to be slightly over five kilograms, however, and Maldonado was sentenced based on this amount. (See PSR at ¶¶ 4, 8). Thus, throughout this Order, the Court will refer to the five kilograms, despite the indictment's reference to six.

[4] See supra note 3. Notably, Maldonado's base offense level would have been the same whether she was sentenced based on five kilograms or six kilograms.

Sentencing Transcript, "S. Tr." at 25-28). The Court did not address whether Maldonado was entitled to a minor role reduction, because even with the reduction, the 120-month mandatory minimum sentence would apply. (S. Tr. at 28). Similarly, Maldonado's counsel did not press his objection concerning the amount of the drugs, because it would not have made a difference in the offense level. (S. Tr. at 4-5). This Court sentenced Maldonado to a 120-month term of imprisonment in the custody of the Bureau of Prisons, to be followed by a five-year term of supervised release, and imposed a $100 fine and a $100 special assessment. (D.E. 40; 44). Judgment of conviction and sentence was entered on September 6, 2002. (D.E. 44). Maldonado timely appealed. (D.E. 45, 47).

In her appeal, Maldonado challenged the district court's determination that she did not qualify for the safety valve provision. In a *per curiam* opinion issued February 9, 2004, the Fifth Circuit affirmed, finding that this Court's "factual finding that Maldonado had not been sufficiently truthful 'is plausible in light of the record as a whole.'" (D.E. 65). The Fifth Circuit's judgment was issued as mandate on March 2, 2004. Maldonado did not file a petition for writ of certiorari.

On February 14, 2005, the Clerk of this Court received Maldonado's motion for relief pursuant to § 2255. (D.E. 68). It is timely.

### III. MOVANT'S ALLEGATIONS

In her motion, Maldonado asserts three grounds for relief. First, she argues that she was not properly sentenced "because the Government and Court failed to seek Individualized Findings for each defendant's responsibility in the offense." (D.E. 68 at 3). Specifically, she claims that she should have been sentenced based on only three kilograms of cocaine, the amount that she was carrying on her person at the time of her arrest. She contends that she should not have been held responsible for the additional two kilograms being carried by Gonzalez. Second, she argues that her sentence is unconstitutional because it violates United States v. Booker, 125 S. Ct. 738 (2005) and violates the

plea agreement. Third, she argues that she was denied effective assistance of counsel due to various alleged errors of counsel, including a failure to seek a severance, a failure to challenge the sufficiency of the indictment, a failure to protect her interests in the plea agreement, and a failure to seek an evidentiary hearing at sentencing.[5]

As discussed in detail herein, none of Maldonado's grounds entitle her to relief.

## IV. DISCUSSION

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

### B. Alleged Misapplication of the Sentencing Guidelines

To the extent that Maldonado is arguing that her sentence was based on a larger amount of cocaine than was proper, her argument is essentially a claim that the Court erred in its application of the guidelines.

---

[5] Maldonado was represented initially by attorney Jose Gonzalez-Falla. Shortly before sentencing she retained new counsel, Jose Luis Ramos. Thus, the first three alleged errors identified presumably were made by Mr. Gonzalez-Falla. The fourth, which allegedly occurred at sentencing, presumably was made by Mr. Ramos.

As an initial matter, to the extent that Maldonado failed to raise this sentencing complaint on direct appeal, her allegation is procedurally barred from consideration here. See United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001); United States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000). A district court may consider a defaulted claim only if the petitioner can demonstrate either (1) cause for her default and actual prejudice or (2) that she is factually innocent of the crime charged. Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999). In this case, Maldonado does not argue that she is actually innocent. Further, she offers no explanation as to why she failed to raise this issue on appeal. Her claim is thus procedurally barred.

Moreover, misapplication of the sentencing guidelines is not a cognizable claim in a § 2255 motion. United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999). Therefore, Maldonado's claim is not a proper § 2255 claim. Finally, even if the claim were properly before the Court, no error has been shown. "A defendant may be convicted of aiding and abetting the offense of possession with intent to distribute a controlled substance even if he did not have actual or constructive possession of the substance." United States v. Gonzales, 121 F.3d 928, 936 (5th Cir. 1997). Maldonado was correctly held responsible for the three kilograms she possessed, as well as for the two kilograms possessed by her co-defendant, Gonzalez. See United States v. Delagarza-Villarreal, 141 F.3d 133, 139-40 (5th Cir. 1997); see generally USSG § 1B1.3 (discussing relevant conduct). Notably, Maldonado was indicted and pleaded guilty to possessing more than five kilograms of marijuana, and, even at sentencing, admitted knowledge of, and involvement with, all five kilograms of drugs. See S. TR. at 17-24. Indeed, even her written statement accepting responsibility for her offense states that she was arrested "with a quantity of cocaine that we were delivering to other persons." See PSR at

¶ 7. Thus, her argument that she should have only been held responsible for the three kilograms on her person is wholly lacking in merit.

**C.     Booker Claim**

Maldonado's second ground for relief is that her sentencing violated the principles set forth in Booker, and thus she argues that she should be resentenced. Booker does not entitle Maldonado to relief because it is not retroactively applicable to cases already final on direct review when it was decided. Thus, Maldonado's claim based on Booker does not provide a basis for relief.

**1.     Booker Background**

To explain the Court's conclusions regarding the retroactivity of Booker, some background regarding both Booker and its predecessor, Blakely v. Washington, 124 S. Ct. 2531 (2004), is warranted. In Blakely, the Supreme Court held that the trial court's sentencing of the state defendant violated his Sixth Amendment right to a jury trial. Specifically, the court held that Apprendi v. New Jersey, 530 U.S. 466 (2000) and other precedents preclude a judge from utilizing a fact found by him using a preponderance of the evidence standard, in order to impose more than the maximum sentence that could be imposed based solely on the facts reflected in the jury verdict or admitted by the defendant. Blakely, 124 S. Ct. at 2537-38. Blakely involved a defendant sentenced in a Washington state court pursuant to Washington's determinate sentencing scheme. See generally id.

Booker addressed Blakely's impact on the federal sentencing guidelines, which are applied in federal criminal cases. Booker consists of two majority decisions. In the first majority opinion, the Court held that Blakely applied to the federal guidelines. As with the sentencing scheme at issue in Blakely, the mandatory nature of the federal sentencing guidelines implicated defendants' Sixth Amendment rights, because the guidelines can require judges to find facts and sentence defendants to

more severe sentences than could be imposed based solely on facts found by the jury or admitted in the plea colloquy. Booker, 125 S. Ct. at 750-51, 756.

In the second majority opinion, the Supreme Court discussed the remedy to be applied in light of its first holding. The remedy selected by the majority of the justices was to excise certain portions of the guidelines (most notably the provision making them mandatory, 18 U.S.C. § 3553(b)(1), and a provision dealing with appeals from sentencing decisions, 18 U.S.C. § 3742(e)), but to preserve the scheme as a whole. Booker, 125 S. Ct. at 756-57. As a result, the Court's decision rendered the guidelines "effectively advisory." Id. at 757. The court held, however, that district courts are required to consider the advisory guideline sentence when sentencing within the statutory ranges set by Congress. Id.

For the reasons discussed in the next section of this Order, the Court concludes that relief under Booker is not available on collateral review to a defendant like Maldonado, whose conviction became final prior to the date Booker was decided, January 12, 2005.

### 2. Retroactivity Analysis

Neither of the majority opinions states that Booker should be applied retroactively to convictions and sentences that are already final. Instead, Justice Breyer's decision concerning the proper remedy simply indicates that the Court's Booker holdings should be applied "to all cases on direct review." Booker, 125 S. Ct. at 769 (emphasis added).[6]

More pertinent to the issue of Booker and Blakely retroactivity is the Supreme Court's decision in Schriro v. Summerlin, 124 S. Ct. 2519 (2004), handed down the same day as Blakely. In

---

[6] The Court recognizes, of course, that retroactivity was not an issue in Booker or its companion case, Fanfan, both of which came to the Supreme Court as direct criminal appeals. Thus, the quoted language arguably has no meaning as to Booker's retroactivity in collateral proceedings.

8

Schriro, the Supreme Court was faced with determining whether its decision in Ring v. Arizona, 536 U.S. 584 (2002), could be applied retroactively on collateral review. Ring, like Blakely, applied the principles of Apprendi. In Ring, the Court held that a jury must find the aggravating facts statutorily required to impose the death penalty. In Schriro, the Court first concluded that Ring was a new rule of procedure (as opposed to a substantive rule), and noted the general principle that new rules of procedure do not apply retroactively. 124 S. Ct. at 2522-23. It then determined that the rule in Ring did not fall within any of the narrow exceptions to the general principle, as set forth in Teague v. Lane, 489 U.S. 288 (1989), including the exception for "watershed rules of criminal procedure" essential to the fairness of the proceedings. Schriro, 124 S. Ct. at 2524-25. It concluded, therefore, that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." Schriro, 124 S. Ct. 2526.

This Court finds the reasoning in Schriro to be persuasive and pertinent here. Like the rule in Ring, the rule announced in Blakely (and extended to the federal guidelines in Booker) is a new rule of procedure, but does not fall within any of the Teague exceptions. Accordingly, Blakely and Booker do not apply retroactively to cases on collateral review.

The Fifth Circuit has not yet addressed whether Booker is retroactively applicable on initial collateral review, although it recently held that the Supreme Court has not made Booker retroactive, for purposes of allowing second or successive petitions under 28 U.S.C. § 2255. In re Elwood, __ F.3d __, 2005 WL 976998 (5th Cir. April 28, 2005). The Second, Third, Sixth, Seventh, and Eleventh Circuits have all addressed the retroactivity of Booker on initial collateral review, however, and have reached the same conclusion as the Court does herein. See McReynolds v. United States, 397 F.3d 479 (7th Cir. 2005)(concluding that Booker states a new non-watershed procedural rule and does not

9

apply retroactively to criminal cases final before its release); United States v. Humphress, 398 F.3d 855 (6th Cir. 2005)(same); Varela v. United States, 400 F. 3d. 864 (11th Cir. 2005)(same); Guzman v. United States, 404 F.3d 139 (2d Cir. 2005)(same); Lloyd v. United States, __ F.3d __, 2005 WL 1155220 (3d Cir. May 17, 2005)(same). Similarly, in a post-Booker decision, the Tenth Circuit rejected a § 2255 movant's argument that Blakely applies retroactively. United States v. Price, 400 F.3d 844 (10th Cir. 2005). In so doing, the Price court utilized reasoning which would be equally applicable to Booker. See generally id.

Because the Court concludes that Booker is not retroactive to cases on collateral review, and because Maldonado's conviction became final prior to January 12, 2005, she is not entitled to relief under Booker.

**D.     Ineffective Assistance of Counsel**

Maldonado's third ground for relief, i.e., her ineffective assistance claim, is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. U.S. v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"), cert. denied, 514 U.S. 1071 (1995); Carter v.

Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### 1. Failure to Obtain Severance

Maldonado first challenges her counsel's failure to seek a severance of the cases between Maldonado and her sister. (D.E. 68). She apparently believes that if the cases had been "severed," she could have only been sentenced based on three kilograms of cocaine, instead of five. Her claim is without merit. Rule 8(b) of the Federal Rules of Criminal Procedure provides that an indictment may charge two or more defendants if "they are alleged to have participated in the same series of acts or transactions, constituting an offense or offenses." Maldonado and her sister were stopped while traveling together in the same vehicle, and each was found to be carrying cocaine strapped onto her person. Clearly, they participated in the same series of acts constituting an offense. Thus, the Court would not have granted a motion to sever. Maldonado presents no authority for the proposition that the Court should have severed the cases.

Moreover, as noted infra at Section IV.B., Maldonado and pleaded guilty to aiding and abetting her co-defendant in possessing more than five kilograms of marijuana. Even if the case against her sister had been severed, she still would have been held responsible at sentencing for the amount of cocaine carried by her sister. Thus, a severance would not have made any difference in the outcome of her case. She cannot establish prejudice and this claim fails.

### 2. Failure to Challenge the Sufficiency of the Indictment

Maldonado next claims that her counsel was deficient for failing to challenge the sufficiency of the indictment. Again, she has not explained nor supported her claim that the indictment was insufficient. In any event, the Court has reviewed the indictment and finds nothing vague or deficient

about it. Maldonado thus suffered no prejudice from her counsel's alleged failure to challenge it, and the Court need not address this claim further.

### 3. Deficiencies With Regard to the Plea Agreement

Maldonado claims that her counsel was deficient for failing to "secure" in her plea agreement a number of benefits, including safety valve relief, no minimum mandatory sentence, and for failing to ensure that she would be held accountable for only three kilograms. As an initial matter, Maldonado has presented no evidence that any such offer from the government was ever given. Her counsel denies that any such plea agreement was ever offered or available. (See D.E. 73, Aff. at 3). Additionally, as the government notes, the government will not offer, and this Court will not accept, a plea agreement that would have restricted the Court's consideration for sentencing of a drug amount jointly possessed by a co-defendant or a plea agreement that guaranteed acceptance of responsibility or safety valve before debriefing. It was this Court's finding that she did not truthfully debrief that ensured she would receive nothing less than the statutory minimum. There is no evidence to suggest that she suffered any prejudice based on any deficiencies by counsel.

### 4. Failure to Obtain Evidentiary Hearing

In her final ground for relief, Maldonado claims her sentencing counsel was ineffective because he did not seek an evidentiary hearing after the government made clear that it intended to "subject her" to a mandatory minimum sentence. There was no breach of the plea agreement by the government warranting an evidentiary hearing. To the contrary, the agreement and the rearraignment transcript both make clear that Maldonado understood that she was not being promised anything less than the 10-year mandatory sentence and that the Court would determine whether she would qualify for safety valve relief or be entitled to a reduction for acceptance of responsibility. (See D.E. 13 at

12

¶ 3 (plea agreement); D.E. 60, Rearraignment Transcript at pp. 19-20, 22-23, 25-28).

In order for Maldonado to show that she suffered prejudice as to any *sentencing* issues, she must show that there is a reasonable probability that but for counsel's alleged errors, the sentencing would have been different. See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000). Notably, Maldonado could only receive a lower sentence than the 120 months she received, if she qualified for safety valve relief or provided substantial assistance. Because this Court did not believe her and did not believe the story she told to agents when debriefing, she was not entitled to safety valve relief. The government did not move for substantial assistance, and Maldonado has presented nothing to show an entitlement to substantial assistance. Thus, there is no evidence to support any contention that, but for counsel's alleged errors, Maldonado would have received a different sentence. Because Maldonado cannot show prejudice as a result of any lack of an evidentiary hearing, this claim fails.

### E.     Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Maldonado has not yet filed a notice of appeal, this Court nonetheless addresses whether she would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an

overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002)(relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right ***and*** that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

The Court concludes that reasonable jurists could not debate the denial of Maldonado's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 123 S. Ct. at 1034 (citing Slack, 529 U.S. at 484, 120 S. Ct. at 1604). Similarly, as to those claims that this Court has addressed on procedural grounds, the Court finds that Maldonado cannot establish either of the Slack criteria. That is, jurists of reason would not debate whether she has stated a valid claim of the denial of a constitutional right, nor would they find this Court's procedural rulings debatable. Accordingly, Maldonado is not entitled to a COA as to her claims.

14

## V.  CONCLUSION

For the above-stated reasons, Maldonado's motion under 28 U.S.C. § 2255 is DENIED. The Court also DENIES her a Certificate of Appealability.

It is so ORDERED this 22nd day of June, 2005.

_____
Janis Graham Jack
United States District Judge